Parker and others vs. The Amazon Insurance Company.

PARKER and others vs. THE AMAZON INSURANCE COMPANY.

INSURANCE AGAINST FIRE. (1) *Waiver of proofs of loss.* (2, 3) *Application filled in by agent of insurer, on his own knowledge; effect of error.* (4) *Unintentional mistake in proof of loss.*

EVIDENCE. (5) *Proof of genuineness of letter.* (6) *Error in rejecting evidence cured.*

Parker and others vs. The Amazon Insurance Company

1. Where an insurer against fire, after a loss and before the time for furnishing proofs thereof has expired, denies all liability entirely *upon other grounds* than the want of such proofs (such as, that a subsequent policy had been taken without the consent of such insurer, and that there was an over-insurance and the loss was fully covered by prior policies), this is a *waiver* of the condition requiring proofs of loss to be made. *McBride v. Ins. Co.*, 30 Wis., 562, and other cases in this court.

2. A question in the form of *application for a policy* related to the ownership of the property; and that part of the application was *filled in by the local agent* of the insurer, on his own knowledge, and without consultation with the assured. *Held*, that a mistake in naming the owners was the *mistake of the insurer*, and cannot defeat the policy, although the application is therein referred to as a part of the contract, and a warranty by the assured. *Miner v. Ins. Co.*, 27 Wis., 693.

3. An *unintentional mistake* in the proofs of loss will not prevent a recovery upon the policy. So *held* where the proofs were made out by the insurer, and stated incorrectly the names of the owners of the property, and there was evidence that one of the firm insured signed the same in haste, without knowledge of the error.

4. The policy referred to an application No. 9719, and there was no application so numbered, but one was offered in evidence by the insurer numbered 9716, purporting to be made by plaintiff, for insurance on the property described in the policy, and in this the agent had made the erroneous entry above described as to the names of the owners of said property. The agent was asked by defendant on the trial whether the policy was issued on *this* application, for the purpose of showing a *false representation* in regard to the ownership. *Held*, that the testimony was properly rejected.

5. The agent for this state of the defendant company testified that he knew the general superintendent of the company, had been in correspondence with him for a year and a half on business of the company, knew nothing about his hand-writing except in this way, and thought the signature to a certain letter purporting to be written by said general superintendent to said witness, offered in evidence by plaintiff, was genuine. *Held*, that this was *sufficient proof of the genuineness* of the letter to entitle it to be *received in evidence*.

6. An error in ruling out evidence is *cured* where such evidence is subsequently introduced.

APPEAL from the Circuit Court for *Winnebago* County. Action by insured to recover on an insurance policy. The

complaint alleges, among other things, that the defendant issued its policy to *Frank L. Parker* and *Betsy L. Smith*, members of the firm of Parker & Smith, under their firm name; that they were the owners of the property insured; that *A. B. Smith* (who is made a party to the suit) was and is the husband of *Betsy L. Smith*; and that due proofs of loss were made. The answer set up as defenses: 1. That at the time the policy was issued, *Parker* and *A. B. Smith* falsely and fraudulently stated that they were the members of the firm and the owners of the property. 2. That by the terms of the policy it was to be void in case of fraud. 3. That plaintiffs had procured additional insurance without defendant's knowledge.

On the trial, plaintiffs offered in evidence the policy, which states: " This policy is made and accepted in reference to the conditions hereto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties thereto." The conditions are printed on the back of the policy. It contains also these words: " For further particulars see application and survey No. 9719, which is hereby made a part of this policy, and a warranty on the part of the assured on file in the agency office" of defendant. Condition six requires, among other things, that "in case of loss the names of the owners shall be set forth in the preliminary proofs of such loss, together with their respective interests therein." Condition .eleven: " If there appear any fraud or false swearing, the insured shall forfeit all claim under this policy." The policy also contains the usual conditions about proofs of loss.

A letter of W. H. Holland, superintendent of defendant, was then offered in evidence; the substance of which was, that the defendant refused to pay on the ground of extra insurance. An objection made to its admission, on the ground that the signature had not been proved, was overruled. The evidence as to the signature sufficiently appears from the opinion of the court. From the testimony it appeared that the firm was composed of *Parker* and *Betsy L. Smith;* that they had

been in partnership about a year and four months; that *A. B. Smith* had been, during the whole time, the agent of his wife, and had also acted as agent for the firm, but had no interest as owner in the property; that *Parker* signed an application for insurance, March 6th, 1872, which was filled out partly by defendant's agent, O. F. Janes, and partly by himself, and to which the firm name was signed; that in this application *Parker* and *A. B. Smith* were stated to be the members of the firm and owners of the property; that these statements in the application were in the handwriting of the agent, and made on his own opinion solely; that when the application was made, a policy was issued by the agent, which was not accepted by the defendant company (the rate of insurance being unsatisfactory), and which was not delivered to plaintiffs; but that on the 20th of March following, the policy in suit was issued at the request of *A. B. Smith*, no second written application being made; and that at this time the former application was not spoken of.

A motion for a nonsuit, on the ground that proofs of loss had not been duly made, was overruled.

Defendant asked its witness Janes to state, whether "this last policy" [the one sued on] was issued on the basis of the application above referred to; but the court held the question to be improper. Defendant then introduced the written proofs of loss sworn to by *Parker*, and other evidence, for the purpose of showing that *Parker* had sworn falsely, and that both he and *A. B. Smith* had made false representations as to the ownership of the insured property; the substance of which evidence is given in the fifth paragraph of the opinion.

The substance of the instructions given and refused also appears in the opinion, except that the following was asked by defendant, and refused: "The written proofs of loss here in evidence purport to have been made by *Parker* and *A. B. Smith*. It does not appear that any were ever furnished by *Parker* and *Betsy*, who were the owners of the property. The

plaintiffs cannot, therefore, recover." Verdict for plaintiffs, and defendant appealed from a judgment thereon.

  *Geo. W. Burnell*, for appellants, argued that there was no sufficient proof as to the signature of Holland, and the letter was not admissible, unless by virtue of sec. 120, 2 Tay. Stats., p. 1609; but this statute refers only to *parties*. If the letter was inadmissible, the nonsuit should have been granted, and the error was not cured by defendant's evidence as to the proofs of loss, which was only introduced to show that those proofs were made by *A. B. Smith*, and not by *Parker* and *Betsy L. Smith*, as alleged in the complaint. 2. The question asked of Jones was improperly excluded. 45 N. Y., 80. Dates and numbers may be explained by parol, to identify the instrument. 1 Greenl. Ev., sec. 285; 4 East, 477; *Quincy v. Quincy*, 11 Jur., 111; 2 Phill. Ev., 744, 745; 4 R. I., 141. 3. It was error to exclude evidence as to extra insurance. 1 Phill. Ev., 171, note. 4. Condition 11 is part of the contract. 3 Hill, 501; 2 Denio, 75; 2 Coms., 219; 9 Barb., 191; 10 Gray, 302; 38 N. H., 232; 5 Vroom (34 N. J. Law), 244. Knowledge of the insured must be presumed. 20 Md., 20; 10 Gray, 302; 11 Iowa, 21. If the condition was violated, the policy was vitiated. *Gies v. Bechtner*, 12 Minn., 279; *Moore v. Ins. Co.*, 29 Me., 97; 6 Cush., 448; 6 Nevada, 15. The question of fraud or false swearing is one of fact for the jury; and the instruction on that subject should have been given. 16 Wall., 375; 7 U. C. C. P., 548; 1 Johns., 523; 12 id., 513; 12 Wend., 507; 8 Met., 114, 348; 16 Peters, 507; 2 Cranch., 419, 439. A contract of insurance is a personal contract, and the misrepresentations were most material. 3 Met., 66; 16 Pet., 495; 2 Atk., 554; 4 Brown's Parl. Cases, 431; 6 Bush (Ky.), 146; 16 Cush., 340–448.

  *Felker & Weisbrod*, for respondents, argued that there was evidence enough as to the signature to render the letter admissible, and its object was to show waiver of proofs of loss. 30 Wis., 562; 1 Greenl. Ev., sec. 577. This being admitted, the nonsuit was properly refused. 2. The question asked Janes was

properly rejected, as there was no evidence that either of the plaintiffs had made any false statements in the application.   3. As to the fourth alleged error, it was incompetent to show insurance in other companies by parol; it was not the best evidence.   *Ellicomb's Case*, 5 C. & P., 522; *U. S. v. Shearman*, Pet. C. C., 98; *Doran's Case*, 1 Esp., 127; 1 Greenl. Ev., secs. 84 and 88.   4. The instructions were properly refused, because they were not relevant to the issues and proofs.

COLE, J.   I.  The first exception relied on for a reversal of the judgment is to the ruling of the court in admitting in evidence the letter purporting to have been written by Holland, superintendent of the defendant company, to its agents in Oshkosh, in respect to the loss.   It was claimed in the court below, and the point is urged here, that there was no sufficient proof of the handwriting or signature of Holland to entitle the letter to be received in evidence.   We deem this position clearly unsupported by the record.   The witness Berry, who testified that he was the state agent of the company, said that he knew Holland, and had had correspondence with him; and thought the signature to the letter was genuine.   He added that he knew nothing about the handwriting of Holland except from knowledge he had derived from correspondence with him for a year and a half upon business of the company.   This is the substance of his testimony.   And it was sufficient proof of the genuineness of the letter in question to entitle it to be received in evidence.   This letter of Holland acknowledges the receipt of a report of Berry in respect to the claim of the assured under the policy in suit, and affords the strongest presumption, arising from the business correspondence, that it was written, or authorized to be written, by him.   1 Greenl. Ev., secs. 573 and 577.

II.  The letter of Holland being admissible in evidence, it follows that there was no error in denying the motion for a nonsuit on the ground that the plaintiffs had failed to make proper

proofs of loss. For that letter denied all liability of the company to pay the loss, (1) because there was a subsequent policy on the same property, which had been taken without the permission of the defendant; and (2) because there was an over-insurance, and the risk was fully covered by prior policies. A denial of all liability on the part of the company upon these grounds was a waiver of all proofs of loss (*Carpenter v. The Troy Fire Ins. Co.*, 4 Wis., 20; *Killips v. The Putnam Fire Ins. Co.*, 28 id., 472; *McBride v. Republic Fire Ins. Co.*, 30 id., 562, and cases cited); although it is proper to add that such proofs of loss were actually made, and were put in evidence as a part of the defense.

III. Another exception relied on is that taken to the ruling of the court in sustaining the objection to the question asked the witness Janes. This witness was the local agent to whom the plaintiffs applied for insurance. An application was made, which, it appears, was filled up in part by the plaintiffs, and partly by the agent on his own knowledge. The policy was issued to "Parker & Smith;" and the complaint alleged, and the proof on the part of the plaintiffs was, that the firm was composed of *Frank L. Parker*, and *Betsey L. Smith*, and that they were the owners of the property insured. The policy referred to an application and survey No. 9719, as constituting a part of the contract and a warranty by the assured. There was, however, no application which corresponded with that number; but one was offered in evidence, No. 9716. In this application the owners of the property insured were stated to be *Frank Parker* and *A. B. Smith*, the husband of *Betsey L.*; and Janes was asked whether the policy sued on was issued on this application, for the evident purpose of showing that there was a false representation in regard to the ownership of the property, and thus defeat a recovery. This question was objected to, and ruled out, as we think, properly under the facts of the case. For the positive and uncontradicted evidence shows that neither *Parker* nor *A. B. Smith*, nor any other person authorized to

answer questions for the owners, ever stated or represented to the agent that the property was owned by *Frank Parker* and *A. B. Smith*. On the contrary, it abundantly appeared that the answer to question six in the application, as to ownership, was filled up by the agent himself, and he alone was undoubtedly responsible for the mistake. This being the case, we think, upon principle and upon authority, the mistake of the agent in that particular should not avoid the policy. He did not ask the assured as to the ownership of the property, but assumed to fill up the application on his own knowledge, without consultation with the applicants; and therefore the mistake of the agent should be deemed that of the company itself. *Miner v. The Phœnix Ins. Co.*, 27 Wis., 693. The assured made no affirmations or representations of any kind in the application, respecting the ownership of the property, and therefore whatever the application contained upon that point was immaterial, and should not avoid the contract. For this reason there was no error in excluding the question asked the witness upon the subject.

IV. It is insisted that it was error to exclude the question asked the witness *A. B. Smith* about what extra insurance there was upon the property besides the defendant's policy, at the time the loss occurred. If there was any error in excluding the question in the first instance, it was cured by the witness fully answering it at a subsequent stage of the trial.

V. The court, at the request of the defendant, charged that if the jury should find from the evidence that *Parker* and *A. B. Smith* falsely represented to the company that they constituted the firm of *Parker & Smith*, and that they were the owners of the property, and that the contract was entered into upon the faith and credit of such representation, when in fact *Smith* was not a member of the firm, and had no interest in the property, or that they misrepesented that *Smith* was a part owner, then there could be no recovery. The court was further asked to instruct the jury, that if they found there had

been any fraud or false swearing on the part of the plaintiffs in regard to the insurance, the membership of the firm, or ownership of the property, or the loss under the policy, before the trial, then this would avoid the contract. This was, we think, properly refused. The court had previously correctly directed the jury upon the law applicable to the evidence. And the only possible relevancy this instruction had was to a mistake in the proofs of loss. These proofs were subscribed and sworn to by *Parker*, and set out that *Parker* and *A. B. Smith* constituted the firm and were the owners of the property. The proofs were made by the agent Berry, who did not remember whether *Smith* or *Parker* gave him information as to the members of the firm. It appeared that *Parker* was in a hurry when the proofs were subscribed and sworn to by him, and there is a conflict upon the point whether the proofs were read to him. He says that he left the matter to Berry, and he supposed the proofs were all right, and both he and *Smith* deny telling the agent that the firm consisted of *Parker* and *A. B. Smith*. Now, if he made an innocent mistake in swearing to the proofs which did not accurately state the owners — if he did not, as he says, know what they contained or any thing about them, — that mistake, although made under oath, should not prevent a recovery. And the error in the instruction is, that it does not make the proper discrimination or distinction as to the consequences which should flow from willful perjury and an innocent mistake in swearing to the proofs in that manner.

We have already observed that all proofs of loss must be regarded as unnecessary, in view of the letter of Holland, which denied the liability of the company on other grounds, stated by him. This disposes of the exception taken to the refusal of the court to give the second instruction asked by the defendant.

*By the Court.*— The judgment of the circuit court is affirmed.